## Case No. 12,571.

### SCULLY v. The GREAT REPUBLIC.

[1 Sawy. 31.] [1]

District Court, D. California. Feb. 8, 1870.

SEAMEN — FAILURE TO JOIN SHIP — RIGHT TO BE REINSTATED—WAGES—FORFEITURE.

Where a seaman fails by his own fault to rejoin the ship at an intermediate port, at which she has touched in the course of the voyage, and she sails away without him, the master is not bound to reinstate him upon the return of the vessel to the same port in the course of her voyage.

[Cited in The Ericson, Case No. 4,510.]

[This was a libel for wages by Thomas Scully against the steamer Great Republic.]

Sullivan & Ellsworth, for libellant.
Cutler McAllister, for claimant.

HOFFMAN, District Judge. The above vessel is one of the line of mail steamers plying between this port and Hongkong, in China, touching at the port of Yokohama, both on the outward and return voyages.

The libellant shipped at this port for the round voyage, as assistant in the steward's department. The vessel arrived at Yokohama on the twenty-seventh April, 1869, and on the twenty-ninth the libellant went on shore by permission, as he says, of the stew-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

ard. By some accident not clearly explained, but probably owing to an indulgence in liquor, he did not return to the landing until after the vessel had sailed.

He therefore remained at Yokohama until the vessel, having made her voyage to Hongkong, touched at Yokohama on her return. The libellant thereupon went on board and claimed to be received again into the service. This the master declined, and took him, with another person similarly situated, before the consul. The latter, on hearing the circumstances, decided that the men were deserters and forfeited their wages and all right to be reinstated in their positions, and an entry to that effect was made on the articles.

The libellant still continued his importunities to be received on board, and the master consented to allow him to resume his position, but on condition that he would relinquish all claim upon the ship for his past or future services until the end of the voyage. The libellant declined to accede to these conditions, and went on shore, where he remained about a month, when he succeeded in obtaining leave to work his passage to this port on board the Japan.

He now claims his wages up to the time he first left the vessel, his expenses at Yokohama from the time he offered his services to the master, and his wages from that time until his arrival at this port.

In arriving at a determination as to the rights of the seaman and the duties of the master under these circumstances, I have not thought it material to decide whether the libellant left the ship in the first instance with or without permission. Assuming that he had leave to go ashore, that leave was necessarily restricted to a short absence, and subject to the paramount duty of returning before the vessel sailed.

The nature of the service in which the vessel was engaged required punctuality and despatch. Her days of departure and arrival were announced in a schedule published in advance, and it was the duty of every seaman, or even passenger, who might desire to go ashore, to ascertain the hour at which she would sail, and to be punctual in returning to the ship. As the libellant neglected this duty, his fault is as great as if he had originally gone ashore without permission. But his absence, though culpable, did not amount to a desertion. There is no reason to believe that he left the ship animo derelinquendi, or with the intention of finally quitting the service. His clothes were left on board, and he endeavored, though too late, to rejoin her.

Neither does it appear that any entry on the log book was made, such as is necessary to fix upon him the consequences of a statutory desertion. As therefore the seaman did not commit the offense, or incur the penalties of a desertion, the only question to be considered is whether he had a right, under the circumstances, to require the master to reinstate him on the return of the vessel to Yokohama.

The duty of the master to receive on board, and to condone the offense of a repentant seaman, is enjoined by the earlier maritime codes, and enforced by numerous judgments of modern admiralty tribunals.

He is entitled to be received on board even after an intentional desertion if he tenders amends at a proper time and manner, and before another person has been employed in his stead; unless his prior conduct has been so flagrantly wrong as to justify his discharge. As observed by Judge Peters, "public policy and private justice, as it is fit they should, here move together." Whitton v. The Commerce [Case No. 17,604]; Lois d'Oleron, art. 14; Laws Wisbuy. art. 25; Cloutman v. Tunison [Case No. 2,907]; Curtis, Merch. Seam. p. 132.

It does not appear in this case that any one had been employed in the place of the libellant.

It may, however, be presumed that if the service for which he was engaged was necessary to the ship, the master, who could have had no certain assurance of finding him at Yokohama on his return, would naturally have provided for its performance by the employment of a substitute.

It is not contended that he had been guilty of any previous offense, such as would have justified his discharge. The question then is, was his offer to return to duty and his tender of amends made under such circumstances as imposed on the master the obligation of receiving him back? Hongkong is distant from Yokohama some sixteen hundred miles. The vessel had performed this voyage and returned to Yokohama—in all thirty-two hundred miles—while the libellant, by his own fault, was not on board. The usual duration of the round voyage for which he shipped is two and a half months. The time that elapsed from her departure from Yokohama until her return was thirty days. The libellant had thus been out of the service for considerably more than one-third of the whole period for which he shipped.

And this failure to perform so important a part of the duties for which he contracted was caused by his own fault. When he committed that fault he knew that its inevitable consequence was to deprive him of the ability to perform his contract during nearly one half of the term of his service.

If he had been a mate, or an engineer, or even a cook or a fireman, the loss of his services might have occasioned great inconvenience, or even peril to the ship. In such case, if the master had, as would have been indispensably necessary, employed another person in his stead, he would have been without the pretense of right to be received on board. The circumstance that it is not proved that another was so employed, ought not, in my judgment, to impair the master's right to treat the con-

tract as broken, and himself as discharged from its obligations.

If the master was bound to receive the libellant back after an interval of thirty days, and when a voyage of 3,200 miles had, in the meantime, been performed, when should this obligation be deemed at an end—at the expiration of six months, or as might occur in the case of a whaling vessel, at the end of a year?

Pothier in his treatise, de Louage Matelots, p. 174 (cited in Curtis, Merch. Seam. p. 135, in note), considers that when the mariner, by an accident or vis major, such as sickness, is prevented from fulfilling his obligations, and from going in the ship for which he has been hired, although he incurs no penalties, yet the master may claim to be discharged from the hiring of services which the mariner has not been able to render, and to demand the restitution of his advances.

But where the seaman has been prevented from embarking by his own fault, as by an arrest for a crime which he has committed, then the breach of his obligation being the consequence of his own act and fault, he would be liable to damages—as, for example, if the master had given higher wages to one hired in his place—notwithstanding the fact that his absence not being voluntary, would not subject him to the penalties of desertion.

Although Pothier does not in this passage directly treat of the right of the seaman, who, by his own fault, fails to rejoin the ship, to be reinstated on subsequent repentance and offer of amends, yet it may clearly be inferred that, in his opinion, the effect of a failure on the part of the mariner to render himself on board the ship, in consequence of which she departs without him, is to discharge the master from the obligations of the contract, and this whether the failure be caused by vis major, or by the seaman's fault. He certainly does not intimate that in the latter case, the seaman has a right to demand to be received on board at any subsequent period of the voyage and wherever he may find the ship.

On grounds of policy, also, this privilege should not be accorded.

The degree to which, in cases of this kind, the conduct of the seaman is the result of volition or design, it is not easy always to determine. In some instances, his failure to rejoin his ship may be caused by mere accident.

In others, it may arise from a reckless indifference to, or contempt of, his duty, nearly allied to a willful intention to violate it—as when, by indulgence in drink, he has incapacitated himself from reaching the place of embarkation.

Even where he has determined to be left behind he can readily, by arriving just in time to be too late, give to his fault the appearance of accident or unpremeditated neglect. If in such cases his right to be reinstated at any subsequent period be recognized whenever the master is unable to show a voluntary desertion, or that he has employed another person in his place, an encouragement would be held

out to the mariner to avoid the performance of his duty for perhaps the most important or the most arducus part of the voyage, with the assurance that when the vessel touches again at the port he must be received on board with rights unimpaired, except as to the wages which he would have earned during his absence, and as to such other charge as may indemnify the ship for the damage his absence has caused.

A fault of this kind on the part of a mate or engineer would justly be regarded as a grave offense.

I think the seaman's conduct should be viewed in the same light, and he should be apprised that when he commits it and the vessel leaves port without him, his contract is broken —his rights under it lost and his connection with the vessel severed, except at the master's discretion.

I have treated this case more at length than its difficulty demanded, because it was intimated at the hearing that the masters and owners of the steamers of this line desired to be informed what their rights and duties are in cases like the present, which are said to be not infrequent.

Under the proofs in this case the libellant has not incurred the penalties of desertion. He is therefore entitled to receive the wages earned by him up to the time he left the vessel, no evidence having been offered to show any special damage to the ship caused by the loss of his services.